UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE

```
********************************
                              *
Susan E. Levesque,            *
                              *          COMPLAINT
            Plaintiff         *          Jury Trial Requested
                              *
v.                            *
                              *
Huggins Hospital,             *
                              *
            Defendant         *
                              *
********************************
```

NOW COMES the plaintiff Susan Levesque, by and through her attorneys Douglas, Leonard & Garvey, P.C., and respectfully submits the within Complaint, stating as follows:

I.    **Parties**

1.    The plaintiff Susan Levesque is a former employee of the defendant Huggins Hospital and resides at 126 Mountain Road, Center Tuftonboro, New Hampshire.

2.    The defendant Huggins Hospital is a New Hampshire corporation with a principal place of business located at 240 South Main Street, Wolfeboro, New Hampshire.

II.   **Jurisdiction and Venue**

3.    The Court may exercise jurisdiction over this matter pursuant to 28 U.S.C. §1331. The Court may exercise supplemental jurisdiction over the plaintiff's State law claim.

4.    Venue is proper because the acts and omissions giving rise to the action occurred within this judicial district.

1

III.   **Facts**

5.      Ms. Levesque began employment with the defendant as a medical technologist on or about November 2, 2010.  Her job required her to engage in repetitive motion activities involving her hands.

6.      Ms. Levesque consistently received overall ratings of "meets expectations" on her annual performance reviews, and she received such a rating on her most recent performance review completed on or about December 7, 2016.

7.      Ms. Levesque suffered an onset of symptoms while working for the defendant on or about April 28, 2017.  Ms. Levesque used a footstool while performing her medical technologist duties because her feet did not reach the floor when she sat in her work chair.  As Ms. Levesque pulled the footstool towards her with her right upper extremity at approximately 4:00 p.m. that day, she experienced sharp shooting pain in her right hand, wrist and forearm up towards the elbow.

8.      The sharp pain soon subsided, allowing Ms. Levesque to complete her shift.  Ms. Levesque experienced increased pain and swelling through the night, however, causing her to seek emergency room treatment in the morning.  When the doctor examined Ms. Levesque the morning of April 29, 2017, she had difficulty moving her hand at all.  The doctor restricted Ms. Levesque from work.

9.      An orthopedic specialist, Dr. Albright, examined Ms. Levesque on or about May 3, 2017, and determined that her presentation was consistent with two (2) possible diagnoses, aggravation of underlying chronic osteoarthritis and acute DeQuervain's tenosynovitis of the right wrist.  The doctor restricted Ms. Levesque from work for an additional two (2) weeks.

10.     Ms. Levesque was next treated or about May 18, 2017 by another orthopedic specialist, Dr. Costello, who noted that Ms. Levesque continued to suffer right thumb pain radiating into her radial forearm.  Dr. Costello extended Ms. Levesque's work restriction through June 1, 2017.

11.     After Ms. Levesque notified the defendant that she would be restricted from work at least through June 1, 2017, the defendant sent Ms. Levesque an application for FMLA leave. Exhibit A.

12.     Ms. Levesque's treating physician, Dr. Costello, completed a Certification of Health Care Provider form in support of Ms. Levesque's application for FMLA leave.  Dr. Costello stated in the Certification that Ms. Levesque's medical condition prevented her from using her right hand and thumb and that Ms. Levesque therefore could not perform all her medical technologist job duties.

13.     Ms. Levesque was approved for FMLA leave through July 21, 2017.

14.     Ms. Levesque was not medically released to return to work when her FMLA leave was about to expire.  By letter dated July 11, 2017, Ms. Levesque notified the defendant that she remained restricted from work and she had been referred to a hand specialist, Dr. Clingman, for further evaluation.  Exhibit B.  By letter dated July 18, 2017, the defendant placed Ms. Levesque on a 2-month leave of absence that the defendant notified Ms. Levesque would expire on September 22, 2017.  Exhibit C.

15.     At a September 5, 2017, medical appointment with Dr. Clingman, Ms. Levesque presented with continued numbness and tingling.  Dr. Clingman advised her that she would need to undergo carpal tunnel release surgery.  Dr. Clingman continued to impose restrictions on Ms.

Levesque's activities, restricting her from such things as repetitive hand motions involving the right wrist, preventing her at that time from performing her medical technologist job duties.

16.      Ms. Levesque corresponded with the defendant (specifically, Human Resources Business Partner Maureen Vaccaro) on September 7, 2017, advising the defendant that Dr. Clingman had recommended her to undergo carpal tunnel release surgery.  Exhibit D.  Ms. Levesque wrote in pertinent part: ""Due to the work restrictions and the surgery that is currently planned, I'm waiting a date which I expect to be informed of soon, I've a question about my leave of absence.  I would like to know if my medical leave of absence could be prolonged since it is due to expire later this month.  The doctor said that most patients take a few weeks to heal and then are expected to have one week of physical therapy.  I look forward to be able to return to my job after [Dr. Clingman] clears me to do so, after having recovered from the carpal tunnel release surgery.  Hopefully, all will proceed smoothly and my hand will be fixed."  Id.  "Thank you in advance for your consideration for an extended medical leave," Ms. Levesque concluded her letter.  Id.

17.      The defendant failed to respond to Ms. Levesque's request for an extended medical leave at any time before September 22, 2017, on which date Ms. Vaccaro sent Ms. Levesque a letter notifying Ms. Levesque of the termination of her employment.  Exhibit E.  "Since you have not received a release to return to work, we will be terminating your employment with Huggins Hospital effective Friday, September 29, 2017."  Id.

18.      After Ms. Levesque received her termination letter in her mail, she called HR Business Partner Vaccaro.  "Did you get my letter requesting an extended leave?" Ms. Levesque asked.  "Yes," HR Business Partner Vaccaro replied.  "May I please have a little more time?"

Ms. Levesque asked.  "No," said HR Business Partner Vaccaro, adding "that wouldn't be fair to other employees."

19.     Ms. Levesque underwent successful carpal tunnel release surgery on September 27, 2017.

20.     After the surgery on or about September 27, 2017, Ms. Levesque visited Huggins Hospital to retrieve her personal belongings.  Ms. Levesque encountered HR Business Partner Vaccaro during her visit.  Ms. Levesque asked the HR Business Partner, "Is there any way to have this decision reversed?"  "No," said HR Business Partner Vaccaro.

21.     Ms. Levesque was released to work effective October 26, 2017, and could have resumed her medical technologist job duties at that time, if the defendant had not fired her.

22.     Ms. Levesque timely filed a Charge of Discrimination with the New Hampshire Commission for Human Rights, alleging disability discrimination and retaliation.  Exhibit F. The Charge was dually filed with the United States Equal Employment Opportunity Commission (EEOC).

23.     After the Charge of Discrimination had been pending with the administrative agencies for six (6) months, Ms. Levesque notified the New Hampshire Commission of Human Rights of her intent to pursue a civil action pursuant to RSA 354-A:21-a.  Ms. Levesque also requested from the EEOC a Notice of Right to Sue.  Exhibit G.  Ms. Levesque received her Notice of Right to Sue on or about October 4, 2018.  Ms. Levesque is filing this lawsuit within 90 days of her receipt of her Notice of Right to Sue, as required.

**COUNT I**
**(Discrimination in Violation of Americans With Disabilities Amendments Act)**

24.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

25.     At all times relevant to this action, Ms. Levesque was a qualified individual with a disability.  Ms. Levesque was qualified for her position, as demonstrated by her performance reviews confirming that she consistently met expectations.

26.     At all times relevant to this action, Ms. Levesque suffered from disabling impairments limiting her in one or more major life activities, including the major life activities of lifting and performing manual tasks.  *See* 42 U.S.C. §12102(2)(A), as amended.

27.     Ms. Levesque was able to perform the essential functions of her job with the reasonable accommodation of a finite period of leave to undergo and recover from surgery to treat her disabling impairments.

28.     The ADAAA requires employers to provide reasonable accommodations for the known physical and/or mental impairments of individuals such as Ms. Levesque with disability. 42 U.S.C. §12112(b)(5)(A).  Granting an employee leave to focus on treatment or convalescence relating to disabling impairments is recognized as a reasonable accommodation under the ADAAA.  Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648-50 (1st Cir. 2000).

29.     Ms. Levesque requested such a reasonable accommodation in her September 7, 2017, letter wherein she asked if her medical leave could be prolonged given that she would be undergoing a carpal tunnel release, and then would need a few weeks to recover from the surgery, as well as one (1) week of physical therapy.  Exhibit E.  Ms. Levesque's September 7, 2017, correspondence demonstrates that the additional leave that she sought was for a finite period of time, to end approximately four (4) weeks after her imminent surgery.

30.     Ms. Levesque's request for a reasonable accommodation triggered an obligation on the defendant's part at a minimum to initiate an interactive process with Ms. Levesque to determine whether the accommodation she proposed was reasonable.  29 C.F.R. §1630.2(o)(3).

31.     The defendant discriminated against Ms. Levesque on the basis of disability, failing and refusing to participate in any interactive process with her regarding reasonable accommodation, refusing her request for the reasonable accommodation of a brief period of additional leave to undergo surgery and convalesce from same, and instead terminating Ms. Levesque's employment.

32.     As a direct and proximate result of the defendant's disability discrimination against Ms. Levesque, Ms. Levesque has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

33.     Ms. Levesque is further entitled to punitive damages based on the defendant's malice and/or reckless disregard of the plaintiff's federally protected rights.

34.     Ms. Levesque is also entitled to her reasonable attorney's fees and costs.

## COUNT II
### (Retaliation in Violation of Americans With Disabilities Amendments Act)

35.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

36.     Ms. Levesque engaged in protected activity, requesting a reasonable accommodation for her disabling impairments, namely a brief and finite extension of her leave so she could undergo surgery and convalesce from it.

37.     The defendant retaliated against Ms. Levesque in response to her request for reasonable accommodation, firing her.

38.     As a direct and proximate result of the defendant's retaliation against Ms. Levesque, Ms. Levesque has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

39.     Ms. Levesque is further entitled to punitive damages based on the defendant's malice and/or reckless disregard of the plaintiff's federally protected rights.

40.     Ms. Levesque is also entitled to her reasonable attorney's fees and costs.

**COUNT III**
**(Violation of RSA 354-A—Disability Discrimination)**

41.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

42.     At all times relevant to this action, Ms. Levesque was a qualified individual with a disability.  Ms. Levesque was qualified for her position, as demonstrated by her performance reviews confirming that she consistently met expectations.

43.     At all times relevant to this action, Ms. Levesque suffered from disabling impairments limiting her in one or more major life activities, including the major life activities of lifting and performing manual tasks.

44.     Ms. Levesque was able to perform the essential functions of her job with reasonable accommodation of a finite period of leave to undergo and recover from surgery to treat her disabling impairments.

45.     The ADAAA requires employers to provide reasonable accommodations for the known physical and/or mental impairments of individuals such as Ms. Levesque with disability. 42 U.S.C. §12112(b)(5)(A).  Granting an employee leave to focus on treatment or convalescence

8

relating to disabling impairments is recognized as a reasonable accommodation under the ADAAA. Garcia-Ayala v. Lederle Parenterals, Inc., 212 F.3d 638, 648-50 (1st Cir. 2000).

46.     Ms. Levesque requested such a reasonable accommodation in her September 7, 2017, letter wherein she asked if her medical leave could be prolonged given that she would be undergoing a carpal tunnel release, and then would need a few weeks to recover from the surgery, as well as one (1) week of physical therapy. Exhibit E. Ms. Levesque's September 7, 2017, correspondence demonstrates that the additional leave that she sought was for a finite period of time, to end approximately four (4) weeks after her imminent surgery.

47.     Ms. Levesque's request for a reasonable accommodation triggered an obligation on the defendant's part at a minimum to initiate an interactive process with Ms. Levesque to determine whether the accommodation she proposed was reasonable. 29 C.F.R. §1630.2(o)(3).

48.     The defendant discriminated against Ms. Levesque on the basis of disability, failing and refusing to participate in any interactive process with her regarding reasonable accommodation, refusing her request for the reasonable accommodation of a brief period of additional leave to undergo surgery and convalesce from same, and instead terminating Ms. Levesque's employment.

49.     As a direct and proximate result of the defendant's disability discrimination against Ms. Levesque, Ms. Levesque has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

50.     Ms. Levesque is further entitled to enhanced compensatory damages based on the defendant's willful and/or reckless disregard of the plaintiff's rights protected under RSA 354-A.

## COUNT IV
### (Retaliation in Violation of RSA 354-A)

51.     The allegations of the preceding paragraphs are repeated and incorporated herein by reference.

52.     Ms. Levesque engaged in protected activity, requesting a reasonable accommodation for her disabling impairments, namely a brief and finite extension of her leave so she could undergo surgery and convalesce from it.

53.     The defendant retaliated against Ms. Levesque in response to her request for reasonable accommodation, firing her.

54.     As a direct and proximate result of the defendant's retaliation against Ms. Levesque, Ms. Levesque has suffered and continues to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience and loss of enjoyment of life.

55.     Ms. Levesque is further entitled to punitive damages based on the defendant's malice and/or reckless disregard of the plaintiff's federally protected rights.

56.     Ms. Levesque is also entitled to her reasonable attorney's fees and costs.

WHEREFORE, the plaintiff Susan Levesque respectfully prays this Honorable Court:

A.     Schedule this matter for trial by jury, and after trial;

B.     Find the defendant liable for disability discrimination in violation of the Americans With Disabilities Amendments Act;

C.     Find the defendant liable for retaliation in violation of the Americans With Disabilities Amendments Act;

D.     Find the defendant liable for disability discrimination in violation of the New Hampshire Law Against Discrimination;

E.      Find the defendant liable for retaliation in violation of the New Hampshire Law Against Discrimination;

F.      Award the plaintiff damages for lost wages, lost employment benefits and lost earning capacity;

G.      Award the plaintiff damages for compensatory damages, including without limitation emotional distress, humiliation, inconvenience and loss of enjoyment of life;

H.      Award the plaintiff punitive damages;

I.      Award the plaintiff enhanced compensatory damages;

J.      Award the plaintiff her reasonable attorney's fees;

K.      Award the plaintiff interest and costs; and

L.      Grant such other and further relief as is just and equitable.

Respectfully submitted,
SUSAN LEVESQUE
By her attorneys,
DOUGLAS, LEONARD & GARVEY, P.C.

Date:  January 2, 2019                    By:    /s/ Benjamin T. King, Esq.
                                                  Benjamin T. King, NH Bar #12888
                                                  14 South Street, Suite 5
                                                  Concord, NH 03301
                                                  (603) 224-1988
                                                  benjamin@nhlawoffice.com